And the next case that's scheduled for oral argument this morning is Theodore Karantsalis v. City of Miami Springs. And Matthew Dietz is here for Karantsalis. Selina Gibson is here for the City of Miami Springs. And Mr. Dietz, you may begin your argument. Thank you, Your Honor. Good morning, Judge Wilson, Judge Rosenbaum, and Judge Hull. My name, again, is Matthew Dietz from Disability Independence Group. And I have the pleasure of representing Theodore Karantsalis. There are three major points that are involved in this case. Number one, the first point is that the continuing violation doctrine should apply in ADA Title II cases and Section 504 cases because standing for injunctive relief exists as long as a person with a disability continues to be excluded from a program, service, or activity of a public entity. And second, even if it is not, even if it doesn't apply, an emotion to dismiss would be inappropriate as there were factual issues in the complaint on the face of the pleadings of when Mr. Karantsalis' claims accrued or when the barriers began to be in existence or modified by the City of Miami Springs. And lastly, the trial court erred in shifting the burden and requiring Mr. Karantsalis to establish and disprove the affirmative defense of statute of limitations in the pleading. Your Honors, the major issue in this case is whether a person who's a longtime resident of a community has standing to complain about barriers in their access to community life. And whether or not the obligation to go to these barriers, go to these issues, go to these places and services ends after a certain time. Now, there's a recent case that this court had, which is Silva v. Baptist Hospital, which involved a hospital's obligation to provide sign language interpreters for deaf people at hospitals. Mr. Silva and Mr. Jevin had been going to the hospital for nine years. Even though they continually had issues over these nine years, the only thing the court said that you can't bring are claims for damages preceding the statute of limitations. But because there was a continuing violation throughout those nine years, the continuing violation doctrine applied. This is entirely consistent with the Tenth Circuit decision in Hamer v. City of Trinidad, which said, and this dealt with curb cuts and other issues in the city. If sidewalks and curb cuts are included under Title II, then a qualified person, individual with a disability would still be excluded every time that that person would encounter the barrier to access. You'd never have a statute of limitations problem there, right? Because all you'd have to do is a disabled person would have to make an effort to access public accommodations, and then the clock starts to run again. As long as the barrier is still there. And a prime example of that, Your Honor, is a case that they just added in New York, Center for Independence for Persons with Disabilities v. Metro Transportation Authority, which is a 2020 case. In that case, the court held that New Yorkers still had standing to complain about stairs that went down to the subway when there's no elevator access, even though the stairs have been there for over 100 years. The same thing with this court with Coleman v. Miller. Their defendant said, you can't complain about the stars and bars because it's been there since 1879, and this court said no. But I think what makes this more particular as to disability cases in the circuit is there's been a plethora of cases, Houston v. Murad, Shots v. Cates, cases that say that a person does not have standing until they have eminence of going back to the place. And if you look at a case like Shots v. Cates, Mr. Shots couldn't go to the court, didn't have standing to allege barriers in the courthouse because he didn't have eminency in going, if he went there prior to the statute of limitations and didn't have a time to go back until after the statute of limitations, he would be forever barred from bringing a case. Help me with this possible narrow rule for your particular case. Your client's disability has materially changed from 2008 to now. He was running in 2008. He only had basic, I understand, y'all just submitted the 2008 complaint, I looked at it, but he had visual impairment. He had an active lifestyle. Today, he's bound to a wheelchair. I'm just trying to think of your particular case and a rule for your case. What is the theory? It seems to me that the nature of his claim, I understand he sued for sidewalks and parking curbs before. He didn't sue for the gym. He didn't sue maybe for a couple of other things, but he did sue for sidewalks, parking curbs, so forth. Why couldn't you say in your case that his claim has materially changed from 2008 to now? Is that not a viable alternative or option here? Oh, Judge Hall, it is, and that's what we did in the third complaint. I mean, it's an extreme change. It's not just a deterioration. It's an extreme difference here. And that's exactly what we did in the third amended complaint. We said that you cannot assume that when you have a disease like MS, it's going to deteriorate. This is not something that's planned. So we said that he did not get his handicap placard until 2017. So he didn't even have standing. And they revised the sidewalks. They redid a lot of these sidewalks in 2017, too, or 16. So that goes into my second argument. Okay, but tell me what the legal theory is. What is the legal theory that would resolve your case? Number one, the claim hadn't even accrued until he actually had standing to bring the case. And in all of those same cases, Houston and Shots, the questions you ask is, would he have an injury? Maybe the claims hadn't accrued for what you need to provide for wheelchair access. He's now got wheelchair access issues, right? Correct. And using the appellee's arguments, if he was born, which he was, with multiple sclerosis. Well, no, he wasn't born. When he was very young, he got multiple sclerosis. Does your standing begin once you have a disease, notwithstanding the progression of the disease? Or how do you even estimate what the progression of a disease is going to be? There's no question that any judge would dismiss his 2009 case immediately before he did, because he didn't have standing to bring issues for handicapped parking where he didn't have a handicapped parking block. How long has he been in a wheelchair? He's been in a wheelchair since 2017. Well, his 2008 complaint wasn't dismissed. He dropped it. But I don't understand this. He says he dropped it because the county attorney told him he didn't have standing. But the case was against the city and not the county. Is the city attorney and the county attorney one in the same? No, Your Honor, but Mr. Karen Salas filed that case pro se, and he filed this case pro se. And I took it over after the case was originally dismissed. And those are all issues of fact that would make a motion to dismiss on a staff limitations case something that shouldn't even be decided. That goes into the third argument. There was nothing on this case in looking at the complaint to say, when did the case accrue? When was it actually a barrier? Did he actually have knowledge? But even whoever told him in 2008, whether or not he even looked it up in a magazine and decided that he didn't have standing. That is the type of issues of fact that should be decided, even if this court doesn't deem the continuing violation. Except doctrine applicable to this case, which it should be. Thank you, Mr. Gates, you reserve some time for rebuttal. We'll hear from Miss Gibson. Thank you, Your Honors. Good morning, Your Honors. May it please the court, Selina Gibson on behalf of the city of Miami Springs. And the city is asking that this court affirm the lower courts dismissal of Mr. Karen Salas's case and find that his claim was barred by the statute of limitations. In general, a statute of limitations period is instituted both to assert that a plaintiff can bring a claim within a certain amount of time. It also protects defendants from the burden of defending cases that have long been passed. But counsel, I'm sorry to interrupt, but I mean, as a practical matter, since the ADA and Rehabilitation Act provide access to the general public. I mean, as a practical matter, does it even really matter if one person's claim is barred if the city has facilities that violate the ADA and Rehab Act? I mean, anybody could just sue anybody who's got a condition that where they are barred in some way from being able to enjoy the facilities could just sue. So as a practical matter, what difference does it make? Your Honor, I understand your question. As a practical matter for this particular case, Mr. Karen Salas is barred by the statute of limitations. Another individual who lives within the city who comes upon a facility and they are qualified and they meet all the different elements under the ADA, they would be able to bring a claim and they wouldn't be entitled to that. Well, that raises two sets of questions. I'm getting back to the first question that I asked you. I don't understand why, as a practical matter, that imposes any less burden on the city than, say, if there were a continuing violation or repeated violation doctrine. So I'll give you a chance to answer that. But let me just say also, my second question is, I'm not sure I understand how you figure that the statute of limitations already passed for him just because he filed in 2008. The cases you rely on in your brief are personal injury cases where the injury is, in fact, is the thing that is discovered as a result of the damage that has been done. But here, the injury is not being able to use the equipment or the facilities. And the condition of the plaintiff is completely separate from that. So it seems like two things there going on. You're conflating the two issues into one. And then getting back to the other issue, I don't understand, as a practical matter, why it makes a difference whether there is a continuing or repeated violation doctrine that would be applicable to the statute of limitations. Why does that matter to the defendant since anybody who can't access the facilities and the whole public can sue as long as the facilities are in a condition that they can't be accessed? Yes, Ron. First, Your Honor, the ADA did not designate what the statute of limitations was. What it is is a guideline that wants cities and various municipalities and governments to bring their facilities into compliance with the ADA to allow and to prevent discrimination against people with disabilities. Section 35.150 and 35.151 describes the way that existing facilities and new construction facilities should be brought up into compliance. At no point is there a requirement that the city has to institute these particular services in every single instance. So for the continuing violations doctrine and the repeated violations doctrine, as a practical matter, if I'm understanding Your Honor's question, is that every single day someone walks out to the sidewalk, they can then sue the city. So every morning, he has a new claim. Every morning, he can restart his statute of limitations. I guess my question is, you're constantly your city, right? So you constantly have people who are moving to your city. There are new members of the community. Every day, you're probably getting new members of your community. Some of those members of the community, and you're having people visit you too. Some of those members of the community, inevitably, for the first time, will experience barriers in your facilities. And so the question is really a practical one. Even assuming, although I think as we've discussed, there are problems with your position that he's barred by the statute of limitations by his 2008 suit, but even assuming that's the case, as a practical matter, what difference does it make to the city? Because as long as its facilities are not in compliance with the ADA, any member of the public can always sue it. Any member whose access is inhibited can always sue it. Yes, Your Honor. In our particular case, it requires that we have a transition plan to bring the facilities into compliance. As stated in Appellant's brief, we do have a transition plan that extends until 2024 to bring our facilities into compliance under the ADA. Due to the financial constraints of our particular city, we had to parse it out over a period of time, which is all that we are required to do is have a transition plan to bring things into compliance and anything that is newly constructed to be constructed in compliance with the ADA. As we mentioned in our response to the third motion to dismiss in 2016, what we did was we added ADA-compliant ramps to the existing sidewalks, which includes the sidewalk across from Mr. Karen Salas' house. But I guess what I'm saying is, you know, this isn't like a personal injury case where there's one person or some specific universe of people who are injured, and then once the injury happens, that's done. And so you can understand why the statute of limitations would run. It's only fair. This is a situation where there's sort of maybe a public injury. I don't know exactly how else to phrase it. And it's ongoing. I mean, maybe what we should do is we should focus on the question of why it is that you think that Mr. Karen Salas is barred by the statute of limitations based on his 2008 filing when he was not at that time suffering from the conditions he's currently suffering from. And so at that time, he could not have brought the current suit because he wouldn't have standing to have done so since his access was not inhibited. Your Honor, what we have done is because there are no cases directly on point with this case is that we've looked at cases with progressive diseases. We have cited two cases where someone had COPD, and it progressively got worse. And when someone initially was diagnosed with HIV and then it became AIDS. Those are all different variations of progressive diseases, where someone is negatively impact their injury gets more severe over time. In all those cases, the courts, including this court, have found that it's not an injury, when you reach maximum severity, but when you know that you are affected by the issue and that when you have an injury in 2000 and can you, what is one case that you rely on for that. It's not a personal injury case. Swindle versus Florida 178F 989 Your Honor that's work related COPD, where he got, he was subjected to asbestos, and then he developed COPD and over time it progressively got worse, and throughout that time he consistently. But, but again the problem there is that the injury. The injury is what caused his disability right and here the disability exists independent of the injury the injury occurs, because as a result of the disability, the person cannot access the facilities and that's when the injury occurs. So, I feel like maybe you are collapsing. The injury with the disability, and I don't, I'm not sure that that really holds for the analysis I don't know if you might want to address that. Yes, sir. I'm not sure if I'm understanding your question, Your Honor, but what the city's position essentially is, is that the sidewalks is a permanent fixture, and as a permanent fixture, it should have set statute of limitations under the discovery rule, multiple sclerosis, even though it is a progressive disease it is one that affects the spinal cord and the brain. So we know that it is a mobility disease. So at that point, a fixed disease disease that affects your spinal cord, and a fixed sidewalk that's in place and not moving should have a statute of limitations, where someone knows someone should not be allowed to sit on their hands for 20 3040 years before bringing a claim against the city for something that was affecting them on a daily basis, but even assuming the premise of your question, which I'm not sure I agree with, but let's just assume it for purposes of the question. In this case, Mr Karen Salas in 2008 when he brought this he he jogs he ran he was active, athletically, his condition didn't start to worsen until 2017 he did not even have disabled driving permit until I don't know if it's 2017 or 2018, and he didn't use crutches, or anything of that nature until 2018. So, you know, when we're talking about getting around between the different machines in the gym, for example, the whole reason he can't get around is because he uses crutches or a wheelchair to get around, and they don't fit between those items. That was not a circumstance that existed for him in 2008. So, I mean, is he supposed to have predicted how his, his, his illness would have progressed and sued on that basis and isn't there a problem with standing with his doing that when he can in 2008 easily navigate the gym equipment around, you know, in the area around the machines. I mean, it seems like that's a problem. I mean, it can't be both ways. Right. He either didn't have standing. When he could access it and there was no real injury to him, even though he had MS and was diagnosed with it. Or if he had standing then, then he had to have predicted how the disease would progress. You know, and I don't even think the best doctors can do that. It seems like there might be a problem there, but how do you account for that. Yes, your honor. So our position wasn't that Mr. Cancel didn't have standing in 2008. That was Mr. Karen's house's position that he didn't have standing and he voluntarily dismissed the case. In that case, he also sued the Miami Dade County, the Department of Transportation, and in his dismissal he has a record that are attached to. Well, I don't think they were submitted but they are part of the 2008 complaint. In the 2008 complaint he does state that he had issues with walking and loss of balance, and that he was suing because of issues with the sidewalks that included issues walking on the sidewalks and the ability to walk with the sidewalks, which would then give him standing if he was having walking ability issues with the sidewalks to have sued them. We won't know what would have happened then because he voluntarily dismissed that case or issues not that we're saying that he didn't have standing then he did have standing at that point in time, and he chose to dismiss the case that should not penalize defendants from having 12 years later, the exact same complaint being filed against them when I agree with you there is some walking and loss of balance I think it's one time. I just look back it is a pro se complaint. But this is case could be easily construe where we find the plaintiff now as to wheelchair access. Why is that a not a materially different claim. I just read swindle I have swindle here. They said it was a railroad case against feel of a negligence and he had COPD. He knew he had COPD and the fact that it worsen. It's very narrowly written and I was on the panel, I just read it. I don't think swindle helps us here. It's a fee law, it's a totally different case, why does he not have a wheelchair access claim, I don't understand that at all. He's now in a wheelchair, he should be able to sue the city for access violation of the ADA with regard to his wheelchair. Why is that not the case. Your if we expand the statute of limitations, then as Judge Wilson said when appellant was being questioned, is that then anyone can sue when they had a walk or not properly sue, and then get dismissed and wait until they're given a wheelchair because with multiple sclerosis, it is progressive, and you're going to get the wheelchair so you just have to wait a year to bring the exact same thing. I was just, I was just answering the question I guess the reason why you can you have a cause of action is because the Americans with Disability Act imposes an affirmative obligation to accommodate persons with disabilities. It's a remedial statute that we liberally construe in favor of people who have these disabilities, and that the answer to the question. Yes, Your Honor, the ADA is liberally construed to help put people with disabilities on the same footing as someone who doesn't, it's to help prevent discrimination and to help prevent them from being barred from access. However, they also say that it's not does not necessitate a public entity in each situation to make the facilities accessible or usable by individuals with disabilities, it does say there is a reasonable accommodation, and not everything needs to have a curb ramp not every sidewalk is required to have it. Let me, let me just go back to this complaint. And shouldn't the district judge have accepted the allegations of this complaint as true, what, which is what he's required to do this at this stage, if he says in his 2017 complaint that my injury did not progress to the point that I'm unable to access the city's at this stage on a 12 v six motion to dismiss don't we have to accept those allegations as true so dismissal would be premature in the statute of limitations and affirmative defense. Yes, Your Honor. So we accept those allegations as true, then the dismissal is premature, isn't it. He says, my injury did not occur until 2017 period. Yes, Your Honor, I understand that what's played in a complaint is to be taken as true. However, Your Honor, or argument wasn't that his disease did not progress or get worse, or argument was that he had the disease, and he had issues with mobility from 2008 and he brought the claim that dealt with mobility, and the same allegations in 2008 and that is what prevents them, not that his disease wasn't progressing or didn't progress to get worse, Your Honor. All right, we have your argument, Miss Gibson, and this release, you have reserved some time for rebuttal. Yes, Your Honor. Um, to, to answer the question in involving when a disability does advance the on the court address that in the frame versus city of Arlington case, which is a Fifth Circuit case 2011 that was appealed and denied cert in the Supreme Court which originally held that streets and sidewalks are our programs and services of the city that in that case the plaintiff knew of the city's accessible sidewalks for many years before having the issues that he had with his disabilities, but he filed his complaint within two years of, of having that access issue. The, the issue about MS is just frozen down stated and it's absolutely true nobody knows what's going to happen. Sometimes it never becomes in, in, in full range and Mr. had a hard time involving many things involving his MS. So, so that all would be issue of fact in any of them. But let me, let me talk about the Fifth Circuit case, the Fifth Circuit made it clear that in that case, the claim was about newly altered sidewalks. Okay. And new construction, not about things that had existed for a long time, they stress that. Is that not correct, and it was only for injunctive relief there was no damage claim there. Correct. Yep. And there's no and there's no damage claim here as well and I don't know that the case in the Fifth Circuit, they got around this text by saying what this is about is newly built areas, I guess, and altered sidewalks here. If we go with altered sidewalks, your allegation are there's a bunch of altered sidewalks Is that correct, correct wrong. Okay. And I'm trying to think about the theory I know about the repeated violations, but we have a lot of cases that kind of cut against, whether you call it continuing or repeated. I'm trying to look at for theory, and maybe it is that his disability is different. It's not as injury is different, maybe he's got a different disability today. When you go to what the nature of his disability is maybe that's a way to do it. Got to be a person with a disability and his disability back then was a disability now yeah you got Ms, he has that disease, but his disability today is something materially different. Would that be a fair. In that, um, um, that is, I think the overall way that that I view it, Joe, is, is that it is the continuing issue and you replace disability with any other protected status status, like the Coleman case. Let's say we were talking about a person came in from the 1960s 1968 and saw a white water fountain and a color water fountain. The fact that they're away from it for 20 years. Does that make that claim, go away because it's still there to me that I always replace another protected status in that. And that's how I limitations and racial discrimination claims, I don't know I think this is something different. I think you do better with judge Rosenbaum's analogy that the bear is the barriers. Each day creating a new, but I don't know. And another issue that I want to point out is the effect that this had on a pro se blanket. In, in effect, judge on Garza decision foreclosed him from ever bringing a case from his home town from a very basic generalized complaint. There, there was none of the benefits usually given to pro se plaintiffs. When it came to this case, especially in the fact that it was turned around on him to argue in his complaint to him to disprove and affirmative defense. What happened to Mr Karen Salas would never have happened to an attorney who is experienced in doing these claims. And that's why I think it's important, not only with regards to continuing violation issue, but the fact that the tables were turned on Mr Karen Salas, and trying to exercise his rights without an attorney. Thank you very much and we would respectfully request that this court reverse this, this opinion. Thank you. Thank you. Thank you, Miss Gibson. In this court will be in recess until nine o'clock tomorrow morning.